Filed 7/31/13  P. v. Stewart CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B239626 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA107119-01) |
| v. | |
| JAMES E. STEWART, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ricardo R. Ocampo, Judge.  Affirmed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Deputy Attorney General, and Seth P. McCutcheon, Deputy Attorney General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Defendant James Stewart appeals from the judgment following his plea of no contest to carjacking and personal use of a gun. His sole contention on appeal is the court erred in denying him a second hearing on his competency to stand trial.

# FACTS AND PROCEDURAL HISTORY

A.    *History of the Crime*

At approximately 2:00 a.m. on June 20, 2009, Oscar Ramirez was stopped at a red light in Compton. Defendant approached Ramirez's vehicle from the passenger side and spoke to Ramirez through an open window. Suddenly, defendant pulled out a handgun, pointed it at Ramirez's head, and threatened to shoot if Ramirez did not step out of the car. Ramirez complied, and defendant proceeded to drive away in the car.

Ramirez ran home and called the police. A Compton police officer responded to the call and interviewed Ramirez upon arrival. The officer used his police radio to describe defendant and the vehicle to other officers, and a call came in about twenty minutes later informing him that a suspect had been detained at a nearby gas station. The officer drove Ramirez to the gas station, and Ramirez identified defendant, the gun, and the vehicle. Defendant was arrested and charged with five felonies.[1]

---

[1]    Defendant was charged with carjacking with the use of a firearm (Pen. Code, § 215, subd. (a)), grand theft auto (Pen. Code, § 487(d)(1)), unlawful driving or taking of a vehicle (Pen. Code, § 10851, subd. (a)), receiving stolen property (Pen. Code, § 496d, subd. (a)), and possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)). It was further alleged that defendant personally used a firearm (Pen. Code, § 12022.53, subd. (b)), committed the crime for the benefit of a street gang (Pen. Code, § 186.22, subd. (b)(4)), and had two prior felony convictions for burglary and accessory to murder.
All future statutory codes are to the Penal Code unless otherwise stated.

2

## B.    *Initial Competency Proceedings*

While waiting for trial, defense counsel in October 2009 declared a doubt as to defendant's mental competency.  The case was remanded to Department 95 to determine whether he was competent to stand trial.  Three doctors examined defendant and reported their findings to Department 95.  Two doctors agreed that defendant was legally incompetent.  The third doctor recognized that defendant might have had limited cognitive functioning but concluded that he was competent.  Based on the reports, Department 95 concluded in July 2010 that defendant was incompetent.  He was assigned to the Department of Developmental Services in September 2010 for treatment.

## C.    *Second Request for Competency Proceedings*

Nearly a year later, on August 2, 2011, the Porterville Developmental Center certified that defendant could understand the nature of the proceedings against him and rationally cooperate with his attorney.  A psychiatrist who relied on three administrations of the Wechsler Adult Intelligence Scale (WAIS) test conducted in the previous five months signed the certification.  The psychiatrist reported signs that defendant was feigning incompetence to delay trial, and a second doctor offered a report "strongly agree[ing]" with the psychiatrist's opinion.  Department 95 took these reports into consideration, found defendant to be competent on August 29, 2011, and returned defendant's case to the trial court.

In the five months following defendant's return to the trial court, defendant appeared in court eight times without questions raised about his ability to assist counsel.  Then, on February 8, 2012, the day before trial was to begin, counsel for defendant sought again to declare a doubt as to defendant's competency.[2]  Counsel

---

[2]    That same day, the Los Angeles County District Attorney amended the information to charge defendant with carjacking with the use of a firearm (§ 215, subd. (a)) and possession of a firearm by a felon (§ 12021, subd. (a)(1)).  The

3

moved for another evidentiary hearing, citing as supposedly new evidence a recent psychological evaluation of defendant. This recent evaluation was prepared by Dr. Robert J. Rome, who reported that, among other things, defendant's multiple WAIS tests within a six-month period produced skewed results of defendant's cognitive abilities. The court reviewed Dr. Rome's report, which we examine in greater detail under *Discussion*, and the next day it denied the motion for a second competency hearing on the ground that there was no substantial evidence of incompetency. The court noted that since defendant "was returned as competent to stand trial, the defendant has been before the court 8 separate times over a 5 month period. At no time does the file reflect any hint or mention of any competency or incompetency." Defendant subsequently pled no contest and was sentenced to 13 years in state prison. The only issue on appeal is whether there was substantial evidence before the court to require another competency hearing.[3]

## DISCUSSION

Defendant contends the court erred in denying a second competency hearing. The legal test a trial court applies in deciding whether to order an additional competency hearing is whether a substantial change of circumstances or new evidence casts serious doubt on the prior finding of competency. (*People v. Jones* (1991) 53 Cal.3d 1115, 1152 (*Jones*).) If a defendant offers evidence raising a reasonable doubt concerning his ability to understand the nature of the proceedings and assist his attorney in his own defense, due process requires an additional competency hearing. (*Ibid*.) When substantial evidence is not adduced,

---

information also specially alleged defendant personally used a firearm (§ 12022.53, subd. (b)) and had two prior felony convictions for burglary and accessory to murder.

[3] The trial court issued a certificate of probable cause for the appeal which was taken after a no contest plea. (§ 1237.5.)

holding an additional competency hearing is within the discretion of the trial court. (*People v. Welch* (1999) 20 Cal.4th 701, 742.)

Defendant relies solely on Dr. Rome's report as new evidence. Focusing on defendant's repeated WAIS cognitive tests, Dr. Rome wrote that "rehearsal factors and the increasing familiarity with the test instructions and tasks" arising from taking the test more than twice in six months as happened here can overstate defendant's intelligence. He stated that an adjusted test score taking into account higher scores from repeated tests would have placed defendant deeper into the mentally retarded range, which was consistent with defendant's test scores from middle and high school. Because there had been concerns about defendant's low cognitive functions and mental health for over a decade, Dr. Rome concluded defendant was not malingering. Dr. Rome rejected another psychiatrist's opinion that defendant was competent because that psychiatrist did not know the medications defendant was taking at the time of defendant's evaluation for competency.

Our review of case law establishes that the trial court was correct in determining that Dr. Rome's report failed to cast doubt upon the prior finding of competency or show a substantial change in circumstances. Four cases in particular inform our understanding. In *Jones*, *supra*, 53 Cal.3d 1115, the trial court properly denied rehearing because defendant appeared competent throughout trial. There, defendant was found competent during pretrial proceedings, and the issue was not raised again until after trial before the court's pronouncement of judgment. (*Id.* at p. 1153.) At that time, defense counsel sought reconsideration of the initial finding, arguing that for a substantial period of time, including at trial that day, defendant was unable to assist with the case. (*Id.* at p. 1152.) Defendant offered a psychiatrist as a witness and requested another competency hearing. (*Ibid*.) The trial court denied the motion without hearing the psychiatrist. (*Ibid*.) Defendant appealed from the denial, and the Supreme Court held that the trial court was correct because defendant's condition was "essentially unchanged from

5

the start of trial, when the court found him competent, to the time he was sentenced, when defense counsel asked that proceedings again be suspended." (*Id.* at p. 1153.) The Supreme Court also held that it was not error for a trial court to use personal observations in drawing its own conclusions about a defendant's competency. (*Ibid.*)

In *People v. Taylor* (2009) 47 Cal.4th 850, there was no change in circumstances when an unusual, but competent, defendant acted strangely during trial. There, one doctor reported that defendant had deficient mental abilities, but defendant was found competent at a hearing nonetheless. (*Id.* at pp. 860-861.) Some of his deficiencies were on display during trial, and, upon appeal from his conviction, defendant argued that this behavior should have led the court to reevaluate his mental competency. (*Id.* at p. 864.) The Supreme Court ruled that defendant failed to point to anything "indicating he had lost the ability to understand the nature of the criminal proceedings." (*Ibid.*) The court said that the defendant's efforts may have been inadequate, but they were "not of a character to cast serious doubt on the trial court's finding that he knew what he was charged with and the nature of the trial in which he took full part." (*Ibid.*)

In *People v. Lawley* (2002) 27 Cal.4th 102, much like *Taylor*, the Supreme Court compared the defendant's behavior to the record and concluded that the trial court was not obligated to initiate a second competency hearing based on a record depicting unusual conduct. There, a self-represented defendant exhibited odd behavior the morning of jury selection and expressed some delusional personal beliefs. (*Id.* at pp. 125-127.) The judge initiated proceedings and two psychiatrists offered conflicting reports. (*Id.* at pp. 127-130.) A separate judge presiding over the hearing ruled defendant competent for trial, and the case was assigned to a new trial judge. (*Id.* at p. 130.) After his conviction, the defendant argued that the new trial judge should have held another hearing based on the defendant's delusional beliefs and odd behavior in the record. (*Id.* at p. 136.) The Supreme Court ruled that the instances defendant cited were not new evidence or a

6

change of circumstances because they appeared "either to manifest the same arguably delusional beliefs . . . or to reflect the ineptitude frequently exhibited by self-represented defendants." (*Id.* at pp. 136-137, fn. omitted.) The court also ruled that it was confident in the ability of trial courts to preside over competency hearings whether or not they have some prior personal experience of a defendant's in-court behavior. (*Id.* at pp. 133-134.)

In *People v. Kelly* (1992) 1 Cal.4th 495, the trial court was not required to hold a second hearing when the defendant raised a doubt based on the same evidence advanced earlier in the proceedings for which the court had conducted a competency hearing. There, defendant had raised a doubt during jury selection but was deemed competent after a competency hearing. (*Id.* at pp. 541-542.) Defendant did not thereafter renew his claim of incompetency until the jury convicted him. (*Id.* at p. 542.) Relying on the same evidence offered during the initial competency hearing, defendant argued that the trial court should have initiated another competency hearing during trial. (*Ibid*.) Disagreeing, our Supreme Court held that there was no change of circumstances. (*Id.* at p. 543.)

Here, other than Dr. Rome's criticism of repeatedly administering the WAIS cognitive test to defendant, there was nothing in the report that suggested defendant's condition changed from the earlier determination of defendant's competency. (*Jones*, *supra*, 53 Cal.3d at p. 1153.) Defendant took "full part" in the proceedings and offered no evidence "indicating he had lost the ability to understand the nature of the criminal proceedings." (*People v. Taylor, supra,* 47 Cal.4th at p. 864; see also *People v. Lawley, supra,* 27 Cal.4th 102 [notwithstanding defendant's idiosyncrasies, defendant's behavior during trial did not suggest incompetency].) Defendant mistakenly contends that Dr. Rome's report is new evidence. In fact, the report relies on information "generally included in the facts" of the original competency proceedings and the significance of repeated WAIS tests was a disputed fact which the trial court resolved against defendant. (*People v. Kelly, supra,* 1 Cal.4th at p. 543.) Ultimately, the criticism

of the other doctors' reports fails to cast "a serious doubt on the validity" of the initial proceeding or to constitute a substantial change in circumstances. (*Jones, supra,* at p. 1152.) For these reasons, the trial court properly denied a second hearing.

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.